IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03317-REB-KLM

JAMES FAIRCLOTH,

Plaintiff,

v.

RAE TIMME, Warden, in her official and individual capacities,
GARY MORGAN, Mental Health Clinician/Designee, in his official and individual capacities,
BERNES, Chief Mental Health Clinician/Designee, in her official and individual capacities,
GARCIA, Mental Health Clinician/Designee, in her official and individual capacities,
JACQUELINE MCCALL, Administrative Head/Designee, in her official and individual capacities,
JOSEPH GIGANTI, Captain, in his official and individual capacities,
UNKNOWN GRAVEYARD DUTY OFFICER AT F.C.F, in his official and individual capacities,
UNKNOWN F.C.F. CELLHOUSE 5 CORRECTIONAL OFFICERS, in their official and individual capacities,
MARQUEZ, Correctional Officer, in his official and individual capacities,
UNKNOWN F.C.F. HEALTH SERVICES ADMINISTRATOR, in their official and individual capacities,
TOM BENEZE, Lt., in his official and individual capacities,
VIOLA, Sgt., in his official and individual capacities,
MILLER, Mailroom Correctional Officer, in her official and individual capacities, and
LINDA WORTHEN, Lt., in her official and individual capacities,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's**

**Second Amended Prisoner Complaint** [#34] (the "Motion").[1] Plaintiff, who is proceeding pro se, filed a Response [#45] in opposition to the Motion on July 31, 2013. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to this Court for recommendation regarding disposition [#35]. The Court has reviewed the Motion, Plaintiff's Response, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#34] be **GRANTED in part** and **DENIED in part**.

## I. Summary of the Case

Plaintiff is an inmate at the Fremont Correctional Facility ("FCF"). On March 7, 2013, he filed a Second Amended Complaint [# 20] pursuant to 42 U.S.C. § 1983 in which he asserts claims regarding alleged violations of the rights guaranteed to him by the First, Fourth, Eighth, and Fourteenth Amendments. Plaintiff asserts a total of sixteen claims against fourteen Defendants in their individual and official capacities and seeks nominal damages, punitive damages, and declaratory relief.[2] *See Second Am. Compl.* [#20] at 46, 48.

### A. Placement in Cell 5A-14

The first ten claims in the Second Amended Complaint relate to Plaintiff's placement

---

[1] [#34] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Plaintiff originally asserted thirty-four claims against twenty-two defendants. Judge Lewis T. Babcock dismissed eighteen claims and eight defendants. *See generally, Order to Dismiss in Part and to Assign Case* [#23]. Because Defendants Garcia, Unknown Graveyard Duty Officer at FCF, Unknown FCF Cellhouse 5 Correctional Officers, and Unknown FCF Health Services Administrator have not been served with Summonses and the Second Amended Complaint in this action, the Court excludes these four unserved Defendants from Plaintiff's definition of "Defendants." *See Order to Show Cause* [#43], at *1-2.

in cell 5A-14 on January 3, 2011, and his attempted suicide that night. Plaintiff asserts that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was placed in a cell with a television cable dangling from the wall despite his suicidal mental health status. *Second Am. Compl.* [#20] at 19-30. Plaintiff asserts these claims against Defendants Timme, Morgan, Bernes, McCall, Giganti, and Marquez (collectively, the "Eighth Amendment Defendants"). *Id.*

**B. Seizure of Documents and Mail**

Plaintiff also asserts six claims related to the alleged seizure of a document and mail in September 2011 and December 2011. Plaintiff alleges that Defendant Tom Beneze ("Beneze"), an intelligence officer/gang coordinator at Colorado Territorial Correctional Facility ("CTCF"), violated his First Amendment rights by confiscating or approving the "confiscation of mail to and from a press publisher under false/fictitious pretenses." *Id.* at 38. Plaintiff also alleges that Defendant Beneze violated his First, Fourth, and Fourteenth Amendment rights by approving the seizure of a trust document and identifying Plaintiff as a member of a security threat group. *Id.* at 39-40.

Additionally, Plaintiff alleges that Defendant Beneze violated his rights to substantive and procedural due process pursuant to the Fourteenth Amendment by identifying Plaintiff as a member of a security threat group. *Id.* at 40-41. Plaintiff also alleges that Defendant Viola, a mailroom sergeant at CTCF, violated his rights under the First and Fourteenth Amendments when "he failed to follow procedure for confiscation of reading and/or legal material." *Id.* at 41. Plaintiff further alleges that Defendant Viola "has failed to correct the illegal seizure of letters seized on December 6th and 8th, 2011[,] and also caused to be lost, a letter to [the] Colorado Prison law project and would not justify or give proof of his

sending mail back to the prison law project."[3] *Id.*

Plaintiff additionally alleges that Defendant Miller, a mailroom clerk at CTCF, violated his constitutional rights when "she failed to follow procedure for confiscation of reading and/or legal material." *Id.* at 42. Finally, Plaintiff alleges that Defendant Linda Worthen ("Worthen"), a lieutenant at CTCF, violated his constitutional rights when she illegally seized "a copy of this Petitioner's Trust Document #2010-155-1173-8" on September 1, 2011, which led to his being labeled as a member of a security threat group. *Id.*

### C. The Motion

On June 12, 2013, Defendants filed the instant Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting defenses based on the Eleventh Amendment and qualified immunity, and arguing that the Second Amended Complaint fails to state a claim. *See generally Motion* [#34].

## II. Standard of Review

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506

---

[3] *See* COLORADO PRISON LAW PROJECT, http://www.coloradoprisonlawproject.org/CPLP/Home.html ("CPLP is a 501(c)(3) civil rights law firm dedicated to ensuring that people in Colorado prisons and jails are housed in a safe, humane, and rehabilitative environment.").

(2006). If at any time, the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506. A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings. *Id.* at 1003.

**B. Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a

cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678.

**C. Plaintiff's Pro Se Status**

Plaintiff is appearing pro se. When considering Plaintiff's Second Amended Complaint and Response, the Court is mindful that it must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a pro se litigant's advocate, nor should it "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se

litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III. Analysis

As a preliminary matter, Plaintiff alleges that Defendants Marquez committed "Misprision of Felony amongst other violations of [their] Oath of Office/fidelity bond pursuant to Article VI, [sections] 2 & 3 of the Articles of Confederation." *Second Am. Compl.* [#20] at 28. The United States Constitution superseded the Articles of Confederation in 1789. *State of Rhode Is. v. Com. of Massachusetts*, 37 U.S. 657, 729-730 (1838). Therefore, the Court **recommends** that Plaintiff's claim brought pursuant to the Articles of Confederation against Defendants Marquez Administrator be **dismissed with prejudice**. *McConnell v. Cirbo*, No. 11-cv-02342-WJM-KLM, 2012 WL 3590762, at *12-13 (D. Colo. Apr. 24, 2012) (stating that dismissal with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend").

### A. Eleventh Amendment

Defendants first raise the issue of Eleventh Amendment immunity. *Motion* [#34] at 4. This challenges the court's subject matter jurisdiction. *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002). The doctrine of Eleventh Amendment immunity protects states and their agents from suit when acting in their official capacities. *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-559 (10th Cir. 2000). To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25

(1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983). Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Here, Defendants are state officers at Colorado Department of Corrections ("CDOC"). *Second Am. Compl.* [#20] at 3-5, 7-8. Consequently, the Court **recommends** that all of Plaintiff's official capacity claims for monetary relief asserted against these Defendants be **dismissed without prejudice** for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) (recognizing the established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**B. Qualified Immunity**

Defendants additionally seek qualified immunity from Plaintiff's claims for monetary relief against them in their "individual" capacities. *Motion* [#34] at 4. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity offers protection both from trial and the other burdens of

litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When Defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must have established the constitutional right. *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard Cnty.*, 494 F.2d 891, 903 (10th Cir. 2007).

**1. Eighth Amendment Claim**

Plaintiff alleges that his Eighth Amendment Rights were violated when the Eighth Amendment Defendants approved his placement in a cell with a television cable approximately six to eight feet long hanging from the wall. *Second Am. Compl.* [#20] at 11, 19-30. He alleges that because he was on suicide/mental health watch at the time and these Defendants knew of the dangerous condition in the cell, he should not have been placed there. *Id.* The Eighth Amendment Defendants first move to dismiss the Eighth Amendment claim because Plaintiff fails to make specific allegations pertaining to Defendants Timme, Bernes, McCall, and Giganti. *Motion* [#34] at 7-9. Additionally, they argue that Plaintiff's allegations that the Eighth Amendment Defendants had the "knowledge and the power" to prevent placement of Plaintiff in the cell are insufficient because the allegations don't address whether any Defendant had a sufficiently culpable state of mind. *Id.* at 8-9.

The Constitution does not mandate comfortable prisons, *Rhoades v. Chapman*, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton

infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104. (quoting *Gregg*, 428 U.S. at 173). To sufficiently allege "deliberate indifference," a prisoner must allege that (1) he was deprived of a medical need that is objectively, "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

**a. Objective Component**

"A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.C.N.H. 1977)). Where an inmate is on the verge of suicide, that psychological condition constitutes a serious medical need to which the state officials must not be deliberately indifferent. *See Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 117 (4th Cir. 1990).

Plaintiff makes the following allegations in support of his assertion that his medical need was sufficiently serious to meet the objective component of an Eighth Amendment deliberate indifference claim: (1) he was on "suicide mental health watch," *Second Am. Compl.* [#20] at 19; (2) on January 3, 2011, he attempted suicide, *id.* at 10-11;[4] (3) on January 4, 2011, he woke up in new cell wearing a suicide/mental health watch outfit and recognized a television cable approximately six to eight feet long hanging from the wall,[5]

---

[4] Plaintiff's Complaint states that on January 3, 2011, he "committ[ed] suicide and fail[ed] to complete in his efforts while in RFP/Segregation cell." *See Second Am. Compl.* [#20] at 10-11. The Court interprets this language to state that on January 3, 2011, Plaintiff attempted suicide.

[5] Plaintiff's Complaint states that on January 4, 2011, he "remembers awakening in another cell and in a suicide/mental health watch garment/outfit, with [an] inmate yelling at him outside the

*id.* at 11; and (4) he then unsuccessfully attempted suicide a second time. *Id*.

The Eighth Amendment Defendants do not dispute that suicide watch qualifies as a sufficiently serious medical need. *See Motion* [#34] at 6-9. Further, suicide attempts are a sufficiently serious medical need. *See Layton v. Board of Cnty. Com'rs of Oklahoma Cnty.*, 512 F.App'x 861, 868 (10th Cir. 2013) ("Death is, 'without [a] doubt, sufficiently serious to meet the objective component necessary to implicate the [Eighth] Amendment."); *Bingham v. Zavaras*, No.10-cv-00604, 2011 WL 2610124, at *9 (D. Colo. Apr. 20, 2011) ("[A] past suicide attempt implicates a serious medical need for purposes of the objective component of an Eighth Amendment claim."). Therefore, at this early phase of the case, the Court finds that Plaintiff sufficiently alleges that he attempted suicide on January 3rd and was on suicide watch at the time of his placement in the new cell. Accordingly, Plaintiff has sufficiently alleged the objective component of the test.

**b. Subjective Component**

Turning to the subjective component of the test, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Court examines whether Defendants were aware of Plaintiff's condition and whether their actions constituted a "deliberate indifference" to Plaintiff's medical need. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[D]eliberate indifference describes a state of mind more

---

cell door. Upon going into a psychotic rage and yelling at the inmate to get away from his door, he then turned to go back to the mattress he was laying on, when he caught sight of a T.V. cable approximately 6' to 8' feet long hanging from the wall." *Second Am. Compl.* [#20] at 11. While this allegation is unclear, the Court liberally construes Plaintiff to allege that he was placed in the new cell with a dangling television cable by one or more prison officials.

blameworthy than negligence." *Id.* at 835; *Hood v. Prisoner Health Servs., Inc.*, No. 05-3198, 180 F.App'x 21, at *25 (10th Cir. 2006) (stating that negligent failure to provide medical care does not rise to "deliberate indifference to serious medical needs"). A prison official is not deliberately indifferent to an inmate's medical needs unless he "knows of [and] disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Smith v. Alvarez*, 898 F. Supp. 2d 1057 (N.D. Ill. 2012) ("To establish the subjective component of an Eighth Amendment claim where the harm is attempted suicide . . . the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life.").

Put differently, Plaintiff here must first allege that the Eighth Amendment Defendants knew of the risk that Plaintiff would use the television cable to attempt suicide. This means that Plaintiff must allege that the Eighth Amendment Defendants knew that (1) Plaintiff was on suicide watch, and (2) the television cable was dangling in the cell. After alleging awareness of these facts from which the inference could be drawn, Plaintiff must also allege facts supporting the conclusion that the Eighth Amendment Defendants actually drew the inference that placing a suicidal inmate in a cell with a six foot dangling television cable created a substantial risk of serious harm. Finally, to sufficiently allege that the risk was disregarded, Plaintiff must allege that the Eighth Amendment Defendants authorized placement in the cell with the dangling cord.

**i. Defendant Marquez**

Plaintiff sufficiently alleges Defendant Marquez's infringement on his Eighth Amendment right. First, Plaintiff's allegation that Marquez stated that Plaintiff was placed

in cell 5A-14 to “finish the job of killing himself” supports the conclusion that Marquez knew Plaintiff was on suicide watch. *Second Am. Compl.* [#20] at 14. Stating that Plaintiff would “finish” the job plausibly alleges that Defendant Marquez was aware of either Plaintiff’s previous suicide attempt or suicide watch status. Second, Plaintiff alleges that all Eighth Amendment Defendants were aware that cell 5A-14 had a television cable dangling from the wall on the date of Plaintiff’s placement there. *Id.* at 11. This allegation sufficiently alleges that Defendant Marquez knew the dangling cable was present in the cell. Third, Plaintiff also sufficiently alleges that Defendant Marquez actually drew the inference that a substantial risk of serious harm existed. He alleges that on February 29, 2012, Defendant Marquez told inmate James Bozarth that Plaintiff was placed in cell 5A-14 to “finish the job of killing himself, thus giving them some type of plausible deniability.” *Id.* at 14. This statement sufficiently alleges that Defendant Marquez inferred that placing a suicide watch inmate in a cell with a dangling television cable would create a substantial risk of another suicide attempt. Stating that a plaintiff is placed in a particular cell to “finish the job of killing himself” implies that the speaker is aware of the dangerous condition that exists within the cell. Otherwise, the statement makes little sense; placing an inmate in any generic cell, by itself, makes him no more likely to attempt suicide. Placing Plaintiff in a cell with an object capable of being used to attempt suicide, however, would increase the likelihood that Plaintiff would actually attempt suicide and is consistent with Defendant Marquez’s statement that Plaintiff was placed in that particular cell to enable him to kill himself. Therefore, Defendant Marquez’s alleged statement plausibly shows that he drew the conclusion that the dangling cable created an excessive risk of Plaintiff attempting suicide. Finally, Plaintiff sufficiently alleges that Defendant Marquez disregarded this health

and safety risk because he alleges that Marquez, "pursuant to A.R. 700-29 approved, apparently, of the placement of this petitioner in cell 5A[-]14."[6] Accordingly, Defendant Marquez, via his alleged personal participation in the placement of Plaintiff in the cell, disregarded this substantial risk of attempted suicide.

Therefore, Plaintiff sufficiently alleges that Defendant Marquez deprived him of a sufficiently serious medical need and was "deliberately indifferent" to an excessive risk caused by placing him in cell 5A-14. *See Vann v. Vandenbrook*, 596 F. Supp. 2d 1238, 1242-1243 (W.D. Wis. 2009) (holding that the prisoner stated a claim for "deliberate indifference" to a serious medical need in violation of the Eighth Amendment where the officers knew about prisoner's suicidal state, refused to place prisoner in a suicide observation program, and left prisoner unattended with a razor and nail clipper). Accordingly, the Court finds that Plaintiff sufficiently alleges an Eighth Amendment violation against Defendant Marquez in his individual capacity. The Court next analyzes the Eighth Amendment violation against the remaining Eighth Amendment Defendants.

**ii. Remaining Defendants**

Plaintiff alleges that on January 3rd and 4th, the Eighth Amendment Defendants all had "knowledge and the power to prevent" Plaintiff from being placed in Cell 5A-14 at FCF while on suicide mental health watch. *Second Am. Compl.* [#20] at 19-30. He further alleges that Defendants Morgan, Bernes, McCall, and Giganti "[were] made known [of] and pursuant to A.R. 700-29 approved of the placement of this petitioner in cell 5A[-]14 at

---

[6] Given the Court's mindfulness of construing the filings of a pro se litigant liberally, *see Haines*, 404 U.S. at 520-521; *Hall*, 935 F.2d at 1110, the Court construes Plaintiff's allegation that "Marquez, approved, apparently, of the placement in Cell 5A[-]14" to mean that Defendant Marquez approved the decision to place Plaintiff in the cell.

Fremont Correctional Facility and/or reasonably should have known that the capacity of the cell assignment put this petitioner in an endangered situation." *Id.* at 20-26. The Eighth Amendment Defendants move to dismiss the Eighth Amendment claim based on Plaintiff's failure to allege Defendants Timme, Bernes, McCall, and Giganti's personal participation in the alleged constitutional violation. *Motion* [#34] at 8.

Evidence of personal participation is a fundamental requirement for finding that an individual defendant violated a plaintiff's constitutional rights. *See Fotte v. Spiegel*, 118 F.3d 1416, 1423-1424 (10th Cir. 1997); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the defendant's participation, control, or direction. *Bennett*, 545 F.2d at 1262-1263; *see also Winslow v. Stanley*, No. 06-cv-02256-ZLW, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007). General, conclusory allegations without supporting factual averments are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996).

Regarding Defendants' alleged personal involvement in placing Plaintiff in the dangerous cell, Plaintiff alleges that Defendants Morgan, Bernes, McCall, and Giganti "pursuant to A.R. 700-29 approved of the placement of this petitioner in cell 5A[-]14 at Fremont Correctional Facility." *Second Am. Compl.* [#20] at 20-26. Furthermore, Plaintiff alleges that the Eighth Amendment Defendants knew (1) that he was placed in the cell "while on suicide mental health watch" and (2) about the dangling television cables. *Id.* at 11, 19-30.

However, Plaintiff does not allege any facts showing that any of these Defendants "actually drew the inference" that placing this inmate in a cell with a dangling television

cable was an "excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Unlike Plaintiff's allegation against Defendant Marquez, Plaintiff does not allege that any remaining Eighth Amendment Defendant recognized the risk of placing an inmate on suicide watch in a cell with a dangling television cable. Plaintiff's only allegation pertaining to the Eighth Amendment Defendants' subjective knowledge about the risk is that they "reasonably should have known of the placement of this petitioner in the cell assignment had put this petitioner in a highly/deadly endangered situation." *Second Am. Compl.* [#20] at 19. However, that the Eighth Amendment Defendants "reasonably should have known" of the risk is a legal conclusion, not a factual allegation. Therefore, Plaintiff does not sufficiently allege that any Eighth Amendment Defendant other than Marquez inferred that placing Plaintiff in the cell was an excessive risk to his health or safety. Accordingly, Plaintiff has failed to sufficiently allege a violation of a clearly established constitutional right, and all Eighth Amendment Defendants except Marquez are entitled to qualified immunity on Plaintiff's Eighth Amendment claim for monetary relief. Pursuant to Fed. R. Civ. P. 12(b)(6), the Court **recommends** that Plaintiff's Eighth Amendment individual capacity claims for monetary relief be **dismissed without prejudice** as to all Eighth Amendment Defendants except Defendant Marquez. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues"). Qualified immunity does not protect Defendants from Plaintiff's Eighth Amendment official and individual capacity claims for declaratory relief. Because Plaintiff sufficiently alleged an Eighth Amendment violation against Defendant Marquez in his

individual capacity, the Court analyzes whether the Eighth Amendment right was clearly established at the time of the alleged violation.

**2. Clearly Established Eighth Amendment Right**

Because Plaintiff has sufficiently alleged both the objective and subjective prongs of “deliberate indifference” to support an Eighth Amendment violation against Defendant Marquez, he must also meet his burden of showing that the right was clearly established. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994); *See Saucier*, 533 at 201 (“[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.”).

The right for prisoners to receive adequate medical care is clearly established. *Id.* at 104. (quoting *Gregg*, 428 U.S. at 173). Additionally, it is well established that prison officers may not be “deliberately indifferent” to the medical needs of suicidal inmates. *Id.* (“[D]eliberate indifference to serious medical needs of prisoners constitutes the ‘unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment.”); *Gaston v. Ploeger*, Nos. 08-3028, 08-3033, 297 F.App’x 738, 741-743 (10th Cir. 2008) (stating that a prison official may not be “deliberately indifferent to a substantial risk of suicide” where he knows the plaintiff exhibits suicidal tendencies).

The illegality of purposefully ignoring a known risk of inmate suicide was established at the time of Defendant Marquez’s actions. *See Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (“[T]o be clearly established, there must be a Supreme Court or Tenth Circuit decision on point.”). In light of this precedent, it would be clear to a reasonable officer in Defendant Marquez’s position that placing a suicidal inmate in a cell with a dangling six foot cable was unlawful. *See Saucier*, 533 U.S. at 202 (“[T]he relevant

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in defendant's position] that his conduct was unlawful in the situation he confronted."). Therefore, a "clearly established" Eighth Amendment right existed.

Because Plaintiff sufficiently alleges Defendant Marquez's violation of clearly established Eighth Amendment law, qualified immunity does not protect Defendant Marquez here. Additionally, Plaintiff sufficiently alleges a Section 1983 claim for monetary relief against Defendant Marquez in his individual capacity for violation of the Eighth Amendment. Pursuant to Fed. R. Civ. P. 12(b)(6) the Court **recommends** that the Motion be **denied** to the extent it seeks dismissal of Plaintiff's Eighth Amendment individual capacity claims for monetary relief against Defendant Marquez.

**3. First Amendment Claims**

Plaintiff alleges that: (1) Defendant Beneze "on several occasions confiscated and/or approved confiscation of mail to and from a press publisher under false/fictitious pretenses," *Second Am. Compl.* [#28] at 38; (2) on or around September 1, 2011, Defendant Worthen seized a copy of Plaintiff's trust document claiming it was a security threat document and Defendant Beneze approved the seizure, refused to return the document, and labeled Plaintiff STG ("Security Threat Group") status, *id.* at 39, 42; (3) on December 6, 2011, Defendant Miller seized an outgoing letter to the American Bulletin Newsletter, *id.* at 39; (4) on or around December 8, 2011, Defendant Miller seized an incoming letter from the American Bulletin Newsletter, *id.*; (5) on May 14, 2012, Defendant Miller seized an ARBTO, Inc. (American Bulletin) mailing, which was returned to Plaintiff

between two weeks to one month later, *id.*; (6) on or around December 26, 2011, Defendant Beneze threatened to place Plaintiff in administrative segregation if he placed another copyright symbol after his name on his outgoing mail, *id.* at 40; (7) Defendant Viola failed to correct the December 6, 2011 and December 8, 2011 seizure of letters and also lost a letter addressed to the Colorado Prison Law Project without providing proof of mailing it, *id.* at 41-42; and (8) Defendant Miller lost a letter addressed to the Colorado Prison Law Project and never provided proof of mailing it, *id.* at 42. According to Plaintiff, these actions have infringed upon his right to the unobstructed flow of incoming and outgoing mail, implicating his First Amendment right to freedom of speech. *Id.* at 38-42. Defendants Beneze, Miller, Viola, and Worthen (collectively, the "First Amendment Defendants) move to dismiss arguing that isolated, inadvertent incidents of interference with a prisoner's mail do not rise to the level of a constitutional violation of either the right of access to the courts or the First Amendment. *Motion* [#34] at 9-10.

A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment. *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Restrictions on prisoners' mail are justified only if they "further [] one [or] more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* (citation omitted). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Legal mail includes correspondence to and from attorneys, courts, government officials,

and, under some circumstances, the media. *See Wardell v. Duncan*, 470 F.3d 954, 964 n.4 (10th Cir. 2006) (referring to "legal mail" as "correspondence with courts or counsel"); Ringel, William E., SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS: SEARCHES OF PRISONERS - MAIL SEARCHES IN PRISON, § 17:13 (Nov. 2013). To adequately plead a claim that prison officials violated an inmate's First Amendment rights regarding mail, the inmate must allege facts showing that: (1) his mail was mishandled; (2) the named defendant was responsible for that mishandling; (3) the mishandling was purposeful; and (4) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest. *Gee*, 627 F.3d at 1187-1188 (10th Cir. 2010); *Simkins*, 406 F.3d at 1242 (holding that negligent mishandling of mail does not give rise to constitutional liability); *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996).

In the interest of prison security, prison officials may open and inspect non-legal mail addressed to an inmate without the inmate being present. *Cotner v. Knight*, 61 F.3d 915, at *5 (10th Cir. 1995). Regarding legal mail, an "isolated incident of mail tampering is usually insufficient to establish a constitutional violation;" instead the inmate must show a pattern or practice of opening an inmate's legal mail outside his presence. *Bruscino v. Pugh*, No. 02-cv-02362 LTB PAC, 2006 WL 980580, at *6 (D. Colo. Apr. 11, 2006).

Here, regarding Plaintiff's mailings, he alleges that: (1) Defendant Beneze confiscated incoming and outgoing mail on "several occasions," *Second Am. Compl.* [#20] at 38-41; (2) Defendant Miller seized an outgoing letter to American Bulletins Newsletter, seized an incoming letter from American Bulletins Newsletter, and lost a letter in the mail without providing proof of having mailed it, *id.* at 42; (3) Defendant Viola and Defendant Miller failed to correct the December 6, 2011 and December 8, 2011 seizure of letters and

lost a letter to the Colorado Prison Law Project without providing proof of having mailed it, *id.* at 40-42; and (4) Defendant Worthen seized a copy of Plaintiff's Trust Document, *id.* at 42.

The Court finds that because Plaintiff's alleged letter to the Colorado Prison Law Project is correspondence with counsel, it qualifies as legal mail. *Id.* at 41-42. However, Plaintiff fails to sufficiently allege an unconstitutional interference with this letter.

First, because Plaintiff only alleges one interference with his legal mail, he fails to allege more than an isolated incident of interference. *See Smith v. Maschner*, 899 F.2d 940, 943-944 (10th Cir. 1990) (holding that the plaintiff failed to sufficiently allege a First Amendment violation where prison officials opened one piece of legal mail accidentally, stating that such "an isolated incident, without any evidence of improper motive" is not a constitutional violation); *Hale v. Ashcroft*, No. 06-cv-00541-REB-KLM, 2008 WL 4426125, at *10 (D. Colo. Sept. 24, 2008) ("[T]he inmate must show a pattern or practice of opening an inmate's legal mail outside his presence."). Second, while Plaintiff alleges Defendants Miller and Viola lost Plaintiff's legal mail, he never alleges any facts supporting the conclusion that these Defendants acted with a state of mind beyond mere "negligence." *See Davis*, 320 F.3d at 251 (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent); *Deleon v. Hoffman*, No. 05-cv-6682 CJS, 2012 WL 75805, at *8 (W.D.N.Y. Jan. 10, 2012) ("District courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few."); *Ajaj*, 2011 WL 902440, at *14 (stating that plaintiff did not state a claim where he alleged no particular facts leading to a conclusion that defendants acted "intentionally and deliberately" or exhibited a "pattern or practice" when interfering with

mail); *Ott v. Tracy*, No.C 98-0031 THE PR, 1998 WL 46939, at *1 (N.D. Cal. Jan. 27, 1998) (holding plaintiff failed to state a First Amendment claim where he never alleged facts indicating that the prison officials acted intentionally, caused more than an isolated incident, or erred in categorizing his correspondence as "unauthorized"); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that inmate must establish actual injury, rather than a "theoretical deficiency" with a legal assistance program to state constitutional claim for interference with access to courts). Accordingly, the Court finds that Plaintiff insufficiently alleges a First Amendment violation with respect to his legal mail.

Next, the Court finds that none of Plaintiff's remaining alleged mailings are, nor does he allege they are, legal mail.[7] Accordingly, Plaintiff's right to the unobstructed flow of this mail is afforded less constitutional protection. *See Cotner*, 61 F.3d 915, at *5 ("[P]rison officials may open and inspect non-legal mail addressed to an inmate."). Plaintiff does not allege that any of the First Amendment Defendants lacked a legitimate penological interest in interfering with his mail. *See Ajaj v. Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *14 (D. Colo. Mar. 10, 2011) (holding that plaintiff failed to state a First Amendment claim because he did not allege facts showing that defendants intentionally mishandled, opened, and read his mail without a legitimate penological justification). Therefore, Plaintiff has not alleged a First Amendment violation with respect to these

---

[7] Plaintiff states, "On, or about September 1, 2011[ ], [Linda Worthen] seized a copy of this [Plaintiff's] Trust Document #2010-155-1173-8 and called [Defendant Beneze] claiming that I had a security threat document. [Defendant Beneze] approved the seizure and met with [Plaintiff] 2 weeks later and refused to return the document and labeled [ ] this [Plaintiff] STG status for being a Secured Party Creditor." The Court interprets the Trust Document to constitute non-legal mail that Defendants Worthen and Beneze deemed to evince potential misconduct by Plaintiff.

mailings.

Furthermore, Plaintiff only alleges two isolated incidents regarding Defendant Miller's seizure of his newsletter mailings and one isolated incident regarding Defendant Worthen's seizure of the trust document. These isolated alleged violations against each of these Defendants do not rise to the level of infringement of Plaintiff's right to subscribe to a news publication or free speech. *See Johnson v. Wilkinson*, No. 98-3866, 229 F.3d 1152, at *2 (6th Cir. 2000) (holding that random and isolated interferences with prisoner mail do not violate an inmate's First Amendment rights). Therefore, Plaintiff has not sufficiently alleged that the First Amendment Defendants infringed on his First Amendment rights.

Because Plaintiff fails to sufficiently allege a violation of this constitutional right, these Defendants are entitled to qualified immunity on Plaintiff's Section 1983 individual capacity claim for monetary relief for violation of the First Amendment. It is unnecessary to consider the second prong of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201 (holding that the Court need not consider the second prong and ask whether the right was clearly established where the plaintiff fails to sufficiently allege a constitutional violation). Pursuant to Fed. R. Civ. P. 12(b)(6), the Court **recommends** that Plaintiff's First Amendment individual capacity claim for monetary relief against the First Amendment Defendants be **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**4. Fourteenth Amendment Claim**

**a. Equal Protection Clause**

Plaintiff alleges that Defendant Beneze violated his Fourteenth Amendment right to equal protection by approving the seizure of a trust document that posed no threat to the safe and secure operation of the facility. *Second Am. Compl.* [#20] at 39. He further alleges that Defendant Beneze approved the dispatch of the American Bulletin Newsletter to an inmate named Edward Lee Hicks, but not to Plaintiff. *Id.* at 40. Plaintiff argues that as a result he was wilfully and wantonly treated differently from other similarly situated inmates without any legitimate penological justification for the difference in treatment. *Id.*

An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). Plaintiff bears the burden of alleging discriminatory intent. To meet that burden, a plaintiff must provide allegations demonstrating that a discriminatory purpose was a motivating factor in the decision attacked by the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

When a plaintiff does not allege that he was treated differently because he is a

member of a suspect class, he must allege sufficient facts to support that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Brown v.* Zavaras, 63 F.3d 967, 971 (10th Cir. 1995); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994); *Hover v. Hickenlooper*, No. 13-cv-01482-BNB, 2013 WL 3353889, at *3 (D. Colo. July 3, 2013). Intentionally disparate treatment of similarly-situated inmates is acceptable under the equal protection clause unless there was no rational basis for the practice. *Vazquez v. Cooper*, 862 F.2d 250, 251-252 (10th Cir. 1988).

Here, Plaintiff does not allege that he is a member of a suspect class. Therefore, he must allege sufficient facts to support the conclusion that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. *See Turner*, 482 U.S. at 89; *Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding that "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considering only whether the treatment was "reasonably related to a legitimate penological purpose"). He alleges that another inmate was allowed to receive an American Bulletin newsletter while Plaintiff was not. *Second Am. Compl.* [#20] at 17, 40. However, he does not allege that this inmate was similarly situated (i.e., a similar offender) or that Defendants Beneze, Viola, Miller or Worthen (collectively, the "Fourteenth Amendment Defendants") lacked a legitimate penological purpose for seizing the trust or the newsletter. *Gwinn*, 354 F.3d at 1228. Therefore, because Plaintiff does not show both that he is "similarly situated" to those he seeks to be compared with (his fellow inmate) and that the allegedly different treatment is not "reasonably related to legitimate penological interests," he fails to sufficiently allege that

his equal protection rights were violated. *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006); *Milligan v. Archuleta*, No. 11-cv-00250, 2013 WL 627143, at *6-7 (D. Colo. Jan. 30, 2013), *order vacated in part on other claims*, 2013 WL 1855796 (D. Colo. May 1, 2013) (holding that plaintiff failed to allege that his Equal Protection rights were violated where he did not sufficiently allege a material similarity between himself and the other inmates); *Phillips v. Steinbeck*, No.06-cv-02569-WDM-KLM, 2008 WL 821789, at *17 (D. Colo. Mar. 26, 2008) (dismissing plaintiff's equal protection claims where he failed to allege any facts suggesting that he was a member of a suspect classification, he was treated differently from other similarly-situated prisoners, or defendants' actions did not serve a legitimate penological purpose). Because Plaintiff fails to sufficiently allege this constitutional violation, it is unnecessary to consider the second prong of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201. Accordingly, the Fourteenth Amendment Defendants' conduct is protected by the doctrine of qualified immunity and the Court **recommends** that Plaintiff's equal protection claim for monetary relief against the Fourteenth Amendment Defendants in their individual capacities be **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**b. Due Process Clause**

Plaintiff alleges that Defendant Beneze violated Plaintiff's Fourteenth Amendment due process rights by approving the seizure of Trust Document #2010-155-1173-8 and labeling him STG status for being a secured party creditor. *Second Am. Compl.* [#20] at

39. Plaintiff argues that Defendant Beneze infringed on Plaintiff's freedom by labeling him STG status without an indictment or proper procedures. *Id.* at 40. Plaintiff additionally alleges that Defendant Worthen violated his due process rights by seizing "a copy of [] Trust Document #2010-155-1173-8" on September 1, 2011. *Id.* at 39. Plaintiff further alleges that Defendant Miller violated his due process rights by seizing an outgoing letter to the American Bulletin Newsletter, an incoming letter from the American Bulletin Newsletter, and failing to follow procedure for confiscation of reading or legal material. *Id.* at 39, 41. Finally, Plaintiff alleges that Defendant Viola, a mailroom sergeant at CTCF, violated Plaintiff's due process rights by failing to correct the December 6th and 8th, 2011 mail seizures and "caus[ing] to be lost[ ] a letter to [the] Colorado Prison Law Project. *Id.* at 41.

To state a Fourteenth Amendment due process claim, a plaintiff must allege facts supporting two elements. *See Veile v. Martinson*, 258 F.3d 1180, 1184-1185 (10th Cir. 2001); *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6-7 (D. Colo. Jan. 17, 2013); *Obando v. Zavares*, 2012 WL 5878209, at *18 (D. Colo. Oct. 30, 2012). First, he must allege that he possesses a protected liberty or property interest. *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7. Second, he must allege that he was not afforded the appropriate level of process. *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7. Here, the Moving Defendants argue that Plaintiff's Second Amended Complaint fails to sufficiently allege that he has a property or liberty interest in possession of his publications or trust document because the materials are inconsistent with his rehabilitation and the safety and security of the CDOC. *Motion* [#34] at 12.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). In considering whether Plaintiff's allegations trigger a liberty interest, the Court must examine the conditions of confinement before determining whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26) (10th Cir. 2002)).

Plaintiff makes the following allegations regarding due process violations: (1) Defendant Beneze confiscated Plaintiff's mail and "denied due processes to [Plaintiff] and stonewalled attempts by [Plaintiff] to compel[,] resolve[,] or give proof of his claims or remedy for his actions," *Second Am. Compl.* [#20] at 38; (2) Defendant Beneze denied Plaintiff "substantive and procedural due processes and caused a stigma-plus alteration to the character of this [Plaintiff] due to his political views without an indictment or other criminal processes," *id.* at 40; (3) Defendant Viola "violated the . . . 14th Amendment of the U.S. Constitution when he failed to follow procedure for confiscation of reading and/or legal material," *id.* at 41; (4) Defendant Miller "violated the . . . 14th Amendment of the U.S. Constitution when she failed to follow procedure for confiscation of reading and/or legal

material," *id.* at 42; (5) Defendant Worthen seized Plaintiff's trust document, did not follow established protocol, and "exaggerated a response in seizing the document through an unsanctioned/undelegated custom that had no legitimate penological interest other than being based upon her own and Lt. Beneze's personal prejudices and opinions of the content," *id.* at 42.

All of Plaintiff's allegations regarding the Fourteenth Amendment Defendants' violation of the due process clause are conclusory and lack particularity as to specific actions taken by Defendants. For instance, Plaintiff alleges that Defendant Beneze confiscated Plaintiff's mail and "denied due processes [sic] to this [Plaintiff] and stonewalled attempts by this [Plaintiff] to compel[,] resolve[,] or give proof of his claims or remedy for his actions." Nowhere in this allegation does Plaintiff allege how Defendant Beneze denied him due process during the course of confiscation or how Defendant Beneze denied Plaintiff the opportunity to be heard. Similarly, Plaintiff alleges that Defendants Viola and Miller failed to follow procedure for confiscation of materials. However, Plaintiff also fails to allege how these Defendants failed to follow prison procedure and how Plaintiff was not afforded the proper level of process. Finally, Plaintiff alleges that Defendant Worthen seized his trust document, labeled him a security threat, and did not follow established protocol, but never alleges how she deviated from established protocol or denied him due process.

Because Plaintiff fails to sufficiently allege a Fourteenth Amendment Due Process violation against the Fourteenth Amendment Defendants in their individual capacities, Defendants' conduct is protected by the doctrine of qualified immunity on this claim. It is unnecessary to consider the second prong of the qualified immunity analysis. *See Saucier*,

533 U.S. at 201. Accordingly, the Court **recommends** that Plaintiff's due process claim for monetary relief against these Defendants in their individual capacities be **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**5.**. **Fourth Amendment Claim**

Plaintiff alleges that Defendant Beneze violated Plaintiff's Fourth Amendment right to be secure in his papers and effects against unreasonable seizure when he approved the seizure of Plaintiff's "Trust Document #2010-155-1173-8." *Second Am. Compl.* [#20] at 39. Defendant's Motion does not include argument regarding Plaintiff's Fourth Amendment claim. *See generally Motion* [#34].

The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const. amend. IV. To assert a violation of Fourth Amendment rights, an individual must demonstrate that he had an "expectation of privacy in the place searched, and that his expectation is reasonable." *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999) (citing *Minnesota v. Carter*, 525 U.S. 83 (1998)). The Supreme Court has found that an expectation of privacy is reasonable if it is derived from a source "outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)). The burden is on the individual to show that he had a reasonable expectation of privacy. *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995).

Regarding an inmate's expectation of privacy, the Supreme Court has held that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). "[A] prisoner's expectation of privacy [should] always yield to what must be considered the paramount interest in institutional security." *Id.* at 528. "[L]oss of freedom of choice and privacy are inherent incidents of confinement. *Id.* (citing *Bell v. Wolfish*, 441 U.S. at 537).

Correspondence to and from inmates in prison are divided into two categories. The first category is "privileged mail," also called "legal mail," and includes correspondence to and from attorneys, courts, government officials, and, under some circumstances, the media. *See* Ringel, William E., SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS, § 17:13 (Nov. 2013). All other mail is non-privileged. There is no Fourth Amendment violation when an inmate's non-privileged mail is seized and read by prison officials. *Stroud v. United States*, 251 U.S. 15, 21-22 (1919) (holding that there was no unreasonable search and seizure in violation of the Fourth Amendment where an inmate's written letter came into the possession of the penitentiary officials under their established practice); *see Smith v. Shimp*, 562 F.2d 423, 425 (7th Cir. 1977) (stating that the interest of the state in monitoring nonprivileged correspondence justifies minor burdens placed on freedom to communicate); *Calihan v. Adams*, No. 1:09-cv-1373-MJS(PC), 2011 WL 284467, at *4 (E.D. Cal. Jan. 26, 2011) ("Prison officials are generally entitled to monitor outgoing nonprivileged, non-legal mail."); *Yancey v. Jenkins*, 638 F.Supp. 340, 341 (N.D. Ill. 1986) ("It is settled law that prisoners have no legitimate expectation of privacy in their [nonprivileged] correspondence."). Additionally, the Tenth Circuit has held that the

"regulation by prison officials [of non-privileged prison mail] is 'essentially an administrative matter in which the courts will not intervene.'" *Gordon*, 168 F.3d at 1228 (citing *Wilkerson v. Warden of United States Reformatory, El Reno*, 465 F.2d 956 (10th Cir. 1972)). In *Gordon*, the Tenth Circuit found that an individual sending non-privileged mail to an inmate had no reasonable expectation of privacy in that mail, where he did not allege that the mail was "legal, official, or privileged." *Id.* Prison officials have a right to open, read, and confiscate inmate mail for internal security reasons. *United States v. Walton*, 935 F. Supp. 1161, 1164-1165 (D. Kan. 1996) (reading and copying of prisoner's letter by prison official did not violate the Fourth Amendment: "[T]he envelope was not sealed; the envelope was not marked legal mail; the envelope was addressed to Defendant [ ], not his lawyer or the court; and Defendant [ ] knowingly and voluntarily gave the envelope to [the] officer [ ] in such condition.").

Plaintiff has not alleged facts suggesting that he has a reasonable expectation of privacy in his trust document. *See Sattar v. Gonzales*, No. 07-cv-02698, 2009 WL 606115, at *2-3 (D. Colo. Mar. 6, 2009) (upholding dismissal of Fourth Amendment claim because Plaintiff could not allege "a legitimate expectation of privacy in his non-legal mail"); *Calihan*, 2011 WL 284467, at *4 (stating plaintiff failed to state a Fourth Amendment claim where he "[did] not allege that Defendants monitored any legal mail or otherwise privileged mail"). Further, not only does he fail to explain the content of the "Trust Document," but he does not allege the Trust Document was mail to or from an attorney or court or otherwise constituted legal mail. Because there is no Fourth Amendment violation when non-privileged mail is seized and read by prison officials, Plaintiff fails to sufficiently allege a Fourth Amendment claim. *See Gordon*, 168 F.3d at 1228; *Walton*, 935 F. Supp. at 1164-

1165. Accordingly, Defendants Beneze, Miller, and Worthen's (collectively, the Fourth Amendment Defendants) conduct here is protected by the doctrine of qualified immunity and the Court **recommends** that Plaintiff's Fourth Amendment individual capacity claim for monetary relief against the Fourth Amendment Defendants be **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### C. Declaratory Relief

As stated above, Defendants are entitled to Eleventh Amendment immunity regarding Plaintiff's official capacity claims for monetary relief. *See supra* § III.A. All Defendants except Marquez are also entitled to qualified immunity regarding Plaintiff's claims for monetary relief because Plaintiff has failed to adequately allege a constitutional violation. *See supra* § III.B. Eleventh Amendment immunity and qualified immunity only immunize Defendants from claims for monetary relief. Plaintiff has the right to bring official capacity constitutional claims against Defendants for declaratory relief only to "end a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64 (1985); *Ex Parte Young*, 209 U.S. 123 (1908).

Here, Plaintiff alleges he was subjected to cruel and unusual punishment, his mail was read and seized, he was denied due process, and generally, that his First, Fourth, Eighth and Fourteenth Amendment rights were "violated." *See generally Second Am. Compl.* [#20]. However, Plaintiff does not allege that Defendants continue to violate his constitutional rights. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645

(2002) ("[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."). Therefore, because Plaintiff's claims all involve past incidents and do not allege ongoing violations of federal law, he does not seek prospective relief here. Accordingly, the Court **recommends** that Plaintiff's official and individual capacity claims for declaratory relief against all Defendants be **dismissed with prejudice**. *McConnell*, 2012 WL 3590762, at *12-13 (stating that dismissal with prejudice was appropriate where no amendment to the plaintiff's complaint could overcome the established law).

**D. Anonymous Defendants**

"[P]ursuant to Fed. R. Civ. P. 10(a), a caption to a complaint must include the names of all parties." *Crosby v. Nelson*, No. 12-CV-01995-PAB-KLM, 2013 WL 4757258, at *5 (D. Colo. May 9, 2013). The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit [therefore,] 'an action may be dismissed if the defendant is not sufficiently identified to permit service of process.'" *Id*.

Here, Plaintiff filed suit on December 20, 2012. *See Compl.* [#1]. He has amended his complaint twice [#10, 16] but has never modified his complaint with the names of the individuals he named as Unknown FCF Graveyard Duty Officer, Unknown FCF Cellhouse 5 Correctional Officers, and Unknown FCF Health Services Administrator. Further, the allegations made against these unnamed Defendants are generic and rely on the same underlying factual allegations asserted against the named Defendants. *Second Am. Compl.* [#20] at 25-27. Specifically, Plaintiff alleges that these anonymous Defendants approved placement of Plaintiff in the cell with the dangling television cable. *Id.* Therefore,

the Court **recommends** that Plaintiff's claims against Defendants Unknown FCF Graveyard Duty Officer, Unknown FCF Cellhouse 5 Correctional Officers, and Unknown FCF Health Services Administrator be **dismissed without prejudice**. *See Crosby*, 2013 WL 4757258, at *6 (dismissing claims against anonymous defendants without prejudice); *Culp v. Williams*, No. 10–cv–00886–CMA–CBS, 2011 WL 1597686, at *4 (D. Colo. Apr. 27, 2011), *aff'd*, 456 F. App'x 718 (10th Cir. 2012), 456 F. App'x at 720 (dismissing claims against anonymous defendants "due to [the p]laintiff's failure to identify properly the[ d]efendants").

**E. Punitive Damages Claim**

Having found that all Defendants except Defendant Marquez are entitled to qualified immunity from liability, the Court need only address whether Plaintiff has stated a claim for punitive damages against Defendant Marquez for his alleged Eighth Amendment violation. Plaintiff seeks punitive damages for Defendant Marquez's willful and malicious conduct in placing him in the dangerous cell. *Second Am. Compl.* [#20] at 46.

Punitive damages are available in a 42 U.S.C. § 1983 action when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Soderbeck v. Burnett County*, 752 F.2d 285, 291 (7th Cir. 1985) (stating that "punitive damages . . . are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it, and not just to a lawyer").

Here, Plaintiff's Complaint alleges Defendant Marquez stated that Plaintiff was placed in the cell to "finish the job of killing himself." *See Second Am. Compl.* [#20] at 14.

This allegation supports the conclusion that Defendant Marquez placed him in the cell *intending* for Plaintiff to attempt suicide. Because this allegation sufficiently implies that Defendant Marquez's conduct was driven by an intentional and evil motive, Plaintiff properly alleges that punitive damages are available in his Eighth Amendment individual capacity claim against Defendant Marquez. *See Vreeland v. Raemisch*, No. 12-cv-01921-PAB-KMT, 2013 WL 5462299, at *12 (D. Colo. Sept. 30, 2013) (holding that the plaintiff's allegations plausibly raised a punitive damages claim where he alleged that the defendant intentionally delayed delivery of the plaintiff's mail outside of his presence despite knowing the regulations restricting his ability to do so). Accordingly, the Court **recommends** that Defendants' Motion be **denied** to the extent it seeks dismissal of Plaintiff's request for punitive damages against Defendant Marquez in his individual capacity and **granted** as to all other claims.

## III. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' **Motion** [#34] be **GRANTED in part** and **DENIED in part**. Accordingly,

IT IS FURTHER **RECOMMENDED** that Defendants' Motion be **GRANTED** as to all claims except Plaintiff's Eighth Amendment claim for monetary relief and punitive damages against Defendant Marquez in his individual capacity.

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims pursuant to the Articles of Confederation and official and individual capacity claims for declaratory relief be **DISMISSED with prejudice** against all Defendants.

IT IS FURTHER **RECOMMENDED** that Plaintiff's remaining claims against all

Defendants be **DISMISSED without prejudice**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-148 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-1413 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 28, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge